UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| HILMI JUDEH<br><br>VERSUS<br><br>T-MOBILE CENTRAL LLC<br>d/b/a T-MOBILE | Civil Action No.:<br><br>Section:<br><br>**COMPLAINT AND JURY DEMAND** |

## COMPLAINT OF RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

**NOW INTO COURT**, Plaintiff Hilmi Judeh ("Plaintiff" or "Mr. Judeh"), by and through her undersigned counsel, files this Complaint and Jury Demand against Defendant T-Mobile.

## INTRODUCTION

1. This is an action for racial discrimination pursuant to 42 U.S.C. § 2000e et seq. (Title VII of the Civil Rights Act of 1964), as amended by the Civil Rights Act of 1991.

## JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

3. Defendant is an "employer" engaged in an industry affecting commerce as defined by 42 U.S.C. § 2000e(b).

1

4. This court has personal jurisdiction over T-Mobile (hereinafter referred to as "T-Mobile"). Defendant T-Mobile is a for-profit corporation doing business in Louisiana. At all times relevant, T-Mobile operated its business within the State of Louisiana.

5. Defendant operates its business within the Eastern District of Louisiana. All actions and inactions by Defendants alleged herein occurred within the Eastern District of Louisiana. Venue in this district is proper for the Defendant pursuant to 28 U.S.C. §1391(b) & (c).

## PARTIES

6. Plaintiff Hilmi Judeh is an Middle-Eastern male residing in New Orleans, Louisiana. At all relevant times, Plaintiff is and has been a resident of the State of Louisiana and met the definition of an "employee" under all applicable statutes.

7. Upon information and belief, T-Mobile is a corporation engaged in the sale of mobile phone service plans. mobile phones, phone accessories and internet service plans. At all relevant times, T-Mobile has met the definition of an "employer" under all applicable statutes.

## FACTS

8. T-Mobile is a privately owned financial services company that employees about 75,000 individuals across the United States, including Louisiana.

9. The Defendant operates a branch of its corporation at 197 Westbank Expressway, Suite 1705, Terrytown, LA 70056.

10. On or about May 23, 2016 the Plaintiff began his employment with T-Mobile as a Retail Sales Consultant.

11. Since the Plaintiff began his employment at T-Mobile, he has won multiple awards and has met and exceeded sales goals.

12. Even though Plaintiff was recognized by the company for his efforts, he has been the victim of continuous harassment and discrimination.

13. Shortly after being hired, Plaintiff witnessed both female and male employees making inappropriate sexual comments. This was the environment that was fostered and accepted at the store. Plaintiff refused to participate in those conversations.

14. Plaintiff was accused of making inappropriate comments by female employees but was not asked to provide his statement prior to any accusation being made.

15. Plaintiff's manager, Maren Trevino, informed Plaintiff about the accusations made against him. As a result of the false accusations, Plaintiff refused to speak to any female employees until the investigation was complete.

16. As a result of Plaintiff exercising his right to protect himself from further allegations, Maren Trevino told the District Manager, Therass Brooks, that Plaintiff was not communicating with his female co-workers.

17. To date, Plaintiff was not informed of the comments he was accused of saying, to who the comments were made or the witness(es) who allegedly heard Plaintiff's comments.

19. Subsequently, as a nice gesture, Plaintiff brought a female co-worker coffee at a sales training and another co-worker, Millanja Wheeler, commented in front of multiple employees including Maren Trevino: "aww you brought your girlfriend coffee". To Plaintiff's knowledge, Millanja Wheeler was not reprimanded nor talked to about her comment.

18. Also in 2016, while Plaintiff was assisting a customer with a sales transaction, Maren Trevino told the female customer: "We hired him for his sex appeal."

20. Beginning in 2017, the associate store manager at the time, Jonathan Payne, attempted to provoke physical confrontations with the Plaintiff. Mr. Payne also interjected himself in sales conversations that Plaintiff had with customers.

21. Again, Plaintiff's manager, Brittany Ferman, did not ask Plaintiff for his statement before presenting him with a performance improvement plan.

22. On one occasion, against company practices, Brtitany Ferman removed one of Plaintiff's regularly scheduled shifts at his home store on Lapalco Blvd to a low volume store in Lakeside because the store was short staffed. Plaintiff did not consent to this change but still offered to compromise by working the morning shift at the Lakeside location while being able to close at the Lapalco location. Plaintiff's request was denied. Plaintiff reported this incident to Jennifer in Human Resources but she refused to investigate Plaintiff's concerns.

23. Plaintiff continued to have issues with Jonathan Payne and he informed the District Manager, Nimer Velasquez, that Jonathan Payne agreed to not pass revenue opportunities to Plaintiff. Ms. Velasquez told Plaintiff "that can't happen". Plaintiff then expressed concern for the tension Mr. Payne was causing and wanted to transfer to a different market. Ms. Velasquez responded with "Get the *profane word* out of my district." Plaintiff reported this to Jennifer in Human Resources and Ms. Velasquez confirmed that she did say those words to the Plaintiff. To Plaintiff's knowledge, Ms. Velasquez was not reprimanded for her actions.

24. Despite the foregoing, Plaintiff still continued to be productive in his employment as a Retail Sales Consultant.

25. Plaintiff applied and interviewed three times for a position as a Retail Associate Manger between 2017-2019. Plaintiff was passed up three times for a promotion.

4

26. Plaintiff was told by his manager at the time, James Robertson, that he could not apply for positions outside the market without the permission from Sarah Woods. Plaintiff was also informed that he would be limited to the number of applications he could submit.

27. Plaintiff was eventually promoted to become a Retail Associate Manger after 3 years in 2019.

28. In or about July 2020, Plaintiff's coworker, Francis Kattelago, made some racial and ethnically discriminatory comments to the Plaintiff. Mr. Kattelago compared Plaintiff to a "slave master". Mr. Kattelago texted a link to a documentary to all store staff members while also texting that Arabs enslaved African Americans before Europeans. To Plaintiff's knowledge, Mr. Kattelago was not reprimanded for his comments.

29. Also, in or about July 2020, Plaintiff was confronted by his manager, Ericka Lewis, concerning some alleged comments the Plaintiff made to his co-workers. Plaintiff informed Ericka that the comments were not true and that he had witnesses. Ericka dismissed his defense and Plaintiff informed her that he would contact Jon Frier, President of Retail Operations, about his concerns.

29. Shortly after expressing his concerns to Jon Frier, AJ Kissel (Market Director) and Sarah Woods presented Plaintiff a "Not in Good Standing Performance Improvement Plan". The improvement plan included allegations from February 2020. While Plaintiff disagreed with the allegations provided in the improvement plan, he was forced to sign it. Plaintiff was retaliated against for voicing his concerns.

30. As a result of Plaintiff's unequal treatment, Plaintiff continued to remain professional by putting in a two-week notice of his resignation from T-Mobile. When asked for

5

his reasoning, he informed the company that he was being discriminated against and would be filing a formal complaint.

31. Shortly after putting in his notice of resignation, T-Mobile retaliated again by opening an investigation in relation to Plaintiff passing out his real estate business card.

32. Plaintiff did not return to work at T-Mobile because of the obvious disproportional treatment, racial and sex discrimination that that he experienced while being employed at T-Mobile.

## CAUSE OF ACTION: RACIAL DISCRIMINATION IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1964 AND SEX DISCRIMINATION IN VIOLATION OF TITLE VII

33. Plaintiff incorporates herein paragraphs 1 through 32 of his complaint.

34. Defendants have engaged in intentional racial discrimination in the terms and conditions of the Plaintiff's employment, including, but not limited to, the Plaintiff's constructive termination in violation of the Civil Rights Act of 1964.

35. Defendants' conduct violates Title VII.

36. By the conduct described above, defendant T-Mobile intentionally deprived the Plaintiff of the same rights as are enjoyed by other citizens to the creation, performance, enjoyment, and all benefits and privileges, of their employment relationship with T-Mobile, in violation of 42 U.S.C. § 1981.

37. As a result of defendant's discrimination in violation of Section 1981, the Plaintiff has been denied employment opportunities providing compensation and benefits, thereby entitling him to injunctive and equitable monetary relief; and have suffered anguish,

humiliation, distress, inconvenience and loss of enjoyment of life because of defendant's actions, thereby entitling him to compensatory damages.

38. In its discriminatory actions as alleged above, T-Mobile has acted with malice or reckless indifference to the rights of the above-named Middle Eastern Plaintiff and, thereby entitling him to an award of punitive damages.

50. To remedy the violations of the rights of the Plaintiff secured by Section 1981, plaintiffs request that the Court award them the relief prayed for below.

51. On or about March 29, 2021 the Plaintiff filed a timely Charge of Discrimination alleging racial discrimination with the Equal Employment Opportunity Commission ("EEOC"). (A true and accurate copy of EEOC Charge of Discrimination # 461-2021-00258, is attached hereto as Exhibit A)

52. The Plaintiff has satisfied all statutory prerequisites for filing this action.

53. On or about January 29, 2022 the Plaintiff received his "Dismissal and Notice Of Rights" letter from the EEOC for her Charge of Discrimination. (A true and accurate copy of the EEOC "Dismissal and Notice of Rights" letter for EEOC Charge of Discrimination # 461-2021-00258, is attached hereto as Exhibit B)

54. To remedy the violations of the rights of the Plaintiff secured by Section 1981, plaintiffs request that the Court award them the relief prayed for below

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for a judgment as follows:

1. That the Court order Defendants to reinstate Plaintiff's employment;

2. That the Court grant full front pay to the Plaintiff;

3. That the Court grant full back pay to the Plaintiff;

4. That the Court grant Plaintiff compensatory damages for the humiliation, emotional distress, and other damages caused by Defendants' conduct;

5. That the Court grant Plaintiff punitive damages for Defendants' malicious and recklessly indifferent conduct;

6. That the Court grant Plaintiff all employment benefits she would have enjoyed had she not been discriminated and retaliated against;

7. That the Court grant Plaintiff expenses of litigation, including reasonable attorneys' fees, pursuant to the Title VII, and/or 42 U.S.C. § 1988;

8. Pre-judgment interest;

9. That the Court grant Plaintiff all other relief the Court deems just and proper; and,

10. That the Court grant a permanent injunction against defendant's agents, successors, employees, representatives, and any and all persons acting in concert with the defendant, prohibiting them from engaging in unlawful sex and racial discrimination against employees or applicants for employment.

## JURY DEMAND

Mr. Judeh demands a trial by jury of all issues do triable in this action.

Respectfully submitted this 25th day of April 2022.

Respectfully Submitted,

**THE MINIAS LAW FIRM**

_____
**Christopher Minias (#36230)**
1615 Poydras Street
Suite 900
New Orleans, LA 70112
Phone: (504) 777-7529
Fax: (504) 556-2866
Email: chris@miniaslaw.com
**Counsel for Petitioner, Hilmi Judeh**

## SERVICE INFORMATION

Plaintiff mailed this day, April 25, 2022 by USPS certified mail Notice of Lawsuit and *Request to Waive Service of a Summons*, two copies of the *Waiver of the Service of the Summons Citation and Acceptance of Service* and a stamped self-addressed envelope to Defendant's agent: Corporation Service Company 801 Louisiana Avenue Baton Rouge, LA 70802. Plaintiff also filed with this Court an unsigned summons.

_____
CHRISTOPHER MINIAS