UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| HILMI JUDEH | * | |
|     Plaintiff, | * | Civil Action |
| | * | File No. 2:22-cv-1130-SSV-MBN |
| | * | |
| versus | * | Judge Sarah S. Vance |
| | * | |
| T-MOBILE USA, INC. | * | Magistrate Judge |
| d/b/a T-MOBILE | * | Michael B. North |
|     Defendant. | * | |

*********************************************

**MEMORANDUM IN SUPPORT OF
T-MOBILE'S RULE 12(b)(6) MOTION TO DISMISS**

Defendant, T-Mobile USA, Inc. ("T-Mobile") submits this memorandum in support of its Rule 12(b)(6) Motion to Dismiss and requests that each claim of Plaintiff Hilmi Judeh ("Judeh") be dismissed with prejudice.

**I.   Allegations from Plaintiff's Amended Complaint**

Judeh, an Arabic male, asserted claims against T-Mobile for discrimination based upon sex, race and national origin and retaliation under Title VII of the Civil Rights Act of 1964 and Civil Rights Act of 1866, as amended, 42 U.S.C. §1981 (1994), *et seq*.[1]

Judeh began his employment with T-Mobile in May of 2016 as a Retail Sales Consultant at T-Mobile's branch in Terrytown, Louisiana.[2] Between 2017 and 2019, Judeh applied and interviewed three times for the position of Retail Associate Manager, and in 2019 T-Mobile promoted Judeh to that position.[3] Judeh alleged that, during his employment with T-Mobile, he won multiple awards and exceeded sales goals.[4]

---

[1] R. Doc. 8, ¶¶1, 36.
[2] R. Doc. 8, ¶¶9, 10.
[3] R. Doc. 8, ¶¶25, 27.
[4] R. Doc. 8, ¶11.

1

Judeh asserted the conclusory allegation that he was the victim of continuous harassment and discrimination.[5] In this regard, Judeh alleged that shortly after being hired he witnessed male and female employees making inappropriate sexual comments.[6] Judeh also alleged that, when he brought a co-worker some coffee at a sales training, another co-worker Millanja Wheeler commented in front of multiple other employees: "aww you brought your girlfriend coffee."[7] Also in 2016, Judeh alleged that his former manager Maren Trevino told a female customer: "We hired him for his sex appeal."[8] The only other allegation of harassment Judeh alleged that he experienced involved an incident with one of his co-workers, Francis Kattelago. In July of 2020, Mr. Kattelago allegedly compared Plaintiff to a slave master.[9] Mr. Kattelago additionally texted a link to a documentary to all store staff members and further texted that Arabs enslaved African Americans before the Europeans did.[10] Judeh alleged that he does not know whether Mr. Kattelago was reprimanded for such comments.[11]

Judeh alleged that he experienced additional conflicts with his co-workers, but none of the alleged incidents were ones where Judeh claimed that he was a victim of harassment that would be unlawful under either Title VII or Section 1981. First, female employees accused Judeh of making inappropriate comments, and when told of the accusations, Judeh refused to speak to any female employees until the investigation was complete, which resulted in another complaint against him that he was not speaking to any female employees.[12]

---

[5] R. Doc. 8, ¶12.
[6] R. Doc. 8, ¶13.
[7] R. Doc. 8, ¶19.
[8] R. Doc. 8, ¶18.
[9] R. Doc. 8, ¶28.
[10] R. Doc. 8, ¶28.
[11] R. Doc. 8, ¶28.
[12] R. Doc. 8, ¶¶14-17.

In a separate incident, Brittany Ferman scheduled Judeh to work a single shift at a low-volume store, which location was one that Judeh did not normally work.[13] Judeh did not consent to the change, and when a compromise that he proposed was rejected, Judeh reported his concerns to Human Resources, who allegedly refused to investigate the matter.[14]

Another co-worker Judeh alleged he had a conflict with was Jonathan Payne, the associate store manager. Mr. Payne allegedly attempted to provoke a physical confrontation with Judeh.[15] Mr. Payne would also interject himself into sales conversations that Judeh had with customers.[16] Judeh alleged that he continued to have issues with Mr. Payne, including Mr. Payne refusing to pass on revenue opportunities to Judeh.[17] Judeh informed District Manager Nimer Velasquez of his issues with Mr. Payne.[18] When Judeh applied for a transfer, Ms. Velasquez allegedly responded "Get the *profane word* out of my district."[19] Judeh reported Ms. Velasquez's comment to Human Resources, but to his knowledge Ms. Velasquez was not reprimanded.[20]

Finally, in July of 2020, Judeh's manager, Ericka Lewis, confronted Judeh with additional complaints made against Judeh by his co-workers about comments that Judeh made.[21] Judeh did not allege what comments he made that precipitated the complaint against him, but Judeh denied making such comments.[22] Judeh told Ms. Lewis that he would raise his concerns to Jon Frier,

---

[13] R. Doc. 8, ¶22.
[14] R. Doc. 8, ¶22.
[15] R. Doc. 8, ¶20.
[16] R. Doc. 8, ¶20.
[17] R. Doc. 8, ¶23.
[18] R. Doc. 8, ¶23.
[19] R. Doc. 8, ¶23.
[20] R. Doc. 8, ¶23.
[21] R. Doc. 8, ¶29.
[22] R. Doc. 8, ¶29.

3

President of Retail Operations.[23] Judeh alleged that shortly after expressing his concerns to Mr. Frier, Market Director AJ Kissel and Sarah Woods presented Judeh with a "Not in Good Standing Performance Improvement Plan" (hereinafter "NGS PIP"), which plan included allegations from February of 2020.[24] Judeh disagreed with the allegations in the NGS PIP and claimed that he was forced to sign it anyway.[25] Judeh alleged that he was retaliated for voicing his concerns to Mr. Frier.[26]

Thereafter, Judeh submitted his two-week notice of resignation.[27] When asked why he was resigning, Judeh alleged that he informed T-Mobile that he was being discriminated against and would be filing a formal complaint.[28] Shortly after putting in his notice of resignation, Judeh alleged that T-Mobile retaliated against him again by opening an investigation in relation to Judeh passing out his real estate business card.[29] Judeh did not return to work as a result.[30]

## II. Standard Of Review For Motions Under Rule 12(b)(6)

The Supreme Court has held that to survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A complaint must also give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *See Cannon v. Smith*, 09-02164, 2010 WL 3522103 at *2 (W.D. La. Aug. 10, 2010). Under Rule 8 of the Federal Rules of Civil Procedure,

---

[23] R. Doc. 8, ¶29.
[24] R. Doc. 8, ¶29.
[25] R. Doc. 8, ¶29.
[26] R. Doc. 8, ¶29.
[27] R. Doc. 8, ¶30.
[28] R. Doc. 8, ¶30.
[29] R. Doc. 8, ¶31.
[30] R. Doc. 8, ¶32.

the notice pleading standard demands "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678 (citing *Papason v. Allain*, 478 U.S. 265, 286 (1986)). A complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 545).

A claim is only plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Although this plausibility standard is not a "probability requirement," it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Where a plaintiff pleads facts that are "merely consistent with" liability, the plaintiff "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Citing *Twombly*, the Supreme Court in *Iqbal* set forth two working principles that underlie the standard for analyzing a motion to dismiss under Rule 12. *See Iqbal*, 556 U.S. at 678-679 (citing *Twombly*, 550 U.S. at 555-556). "First, the tenet that a court must accept as true all of the allegations contained in a complaint" does not require a court to accept the plaintiff's alleged "legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal,* 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). The Supreme Court has held that a court considering a motion to dismiss filed under Rule 12(b)(6) must determine if the factual allegations in a plaintiff's complaint raise a right to relief above the speculative level. *Rhodes v. Prince*, 360 F. App'x. 555, 557 (5th Cir. 2010) (citing *Twombly*, 550 U.S. at 555).

**III.    Judeh Failed to Exhaust His Remedies With Respect to His Claims of Sex Discrimination and Failure to Promote**

Any claims for sex discrimination and failure to promote that Judeh asserted under Title VII are not properly before the Court because Judeh failed to exhaust his administrative remedies. Additionally, such claims are time barred.

Title VII requires employees to exhaust their administrative remedies before filing suit. *Scott-Benson v. KBR, Inc.*, 826 F. App'x 364, 367 (5th Cir. 2020)(citing *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006)).   In Louisiana, a charge must be filed with the EEOC within 300 days after the alleged unlawful employment practice. *Mitchell v. Am. Elec. Power*, No. 07-CV-2073, 2008 WL 11391300, at *3 (W.D. La. Apr. 14, 2008).  Thereafter, once the EEOC issues a right-to-sue letter to the party who has filed the EEOC charge, that party has 90 days to file a Title VII action. *Price v. Choctaw Glove & Safety Co.*, 459 F.3d 595, 598 (5th Cir. 2006).

Judeh alleged in his Amended Complaint that, "shortly after being hired" in May of 2016, he "witnessed both female and male employees making inappropriate sexual comments."[31]  Judeh alleged other instances of supposed sex-based harassment, also occurring in 2016, like a co-worker saying to Judeh, "aww you brought your [Judeh's] girlfriend coffee," and another co-worker remarking to a customer that "We hired him [Judeh] for his sex appeal."[32]  To be timely and to preserve any claims he may have for sex harassment, Judeh needed to have filed a charge with the EEOC no later than November of 2017 (assuming the last incident occurred on December 31, 2016).  However, Judeh filed his only charge to the EEOC on March 29, 2021.[33]  Additionally, Judeh's EEOC charge is devoid of any allegation of sex discrimination.  Not only did Judeh fail

---

[31] R. Doc. 8, ¶¶10, 13.
[32] R. Doc. 8, ¶13.
[33] R. Doc. 8, ¶51; *See also* R. Doc. 1-1.

to check the box for "sex" as a basis of discrimination in the charge, but also absent in his EEOC charge are any of the issues of sex discrimination that Judeh raises in the Amended Complaint.[34]

Additionally, Judeh's failure to promote claim is not properly before the Court. Judeh alleged that on three occasions between 2017 to 2019 he was passed up for promotion to the position of Retail Associate Manager.[35] Judeh also alleged that he was "eventually promoted to become a Retail Associate Manager…in 2019." [36] Thus, Judeh needed to file a charge with the EEOC sometime in 2020, but as previously noted, Judeh filed his charge in March of 2021. Furthermore, nowhere in Judeh's EEOC charge did he complain about being passed over for promotion or alert the EEOC of an issue concerning his promotion.[37]

Judeh's claims regarding sex discrimination and of being passed over for promotion are not properly before this Court due to Judeh's failure to exhaust his administrative remedies. Accordingly, T-Mobile prays that this Court grants this motion and dismisses such claims.

## IV.   Judeh Failed To State A Claim for Race or National Origin Discrimination[38]

Title VII and Section 1981 makes it unlawful to discriminate on the basis of race with regard to the "terms, conditions or privileges of employment" and prohibits an employer from depriving "any individual of employment opportunities or otherwise adversely affect[ing] his status as an employee" on the basis of race. *42 U.S.C. §2000e-2(a); 42 U.S.C. §1981*. Title VII also makes it unlawful for employers to discriminate on the basis of an employee's sex and national origin. *42 U.S.C. §2000e-2(a)*. Claims under Title VII and 42 U.S.C. §1981 are analyzed the

---

[34] R. Doc. 1-1.
[35] R. Doc. 8, ¶25.
[36] R. Doc. 8, ¶27.
[37] R. Doc. 1-1.
[38] T-Mobile previously discussed that Judeh's claim for sex discrimination is not properly before the Court. Should this Court rule otherwise, T-Mobile's argument in Section IV of this memorandum also extends and applies equally to Judeh's claim for sex discrimination.

same. *See Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014)) ("The legal framework governing claims under both statutes is the same as for claims brought under Title VII").

In the absence of factual allegations showing that there is direct evidence of discrimination, to withstand dismissal the plaintiff must allege facts that "demonstrate that he (1) belonged to a protected group' (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was replaced with a similarly qualified person who is not a member of his group, or in the case of disparate treatment, that similarly situated employees were more favorably treated." *Burrle v. Northrop Gruman Co.*, No. CIV.A. 11-1591, 2011 WL 6024488, at *4 (E.D. La. Dec. 1, 2011) (citing *Nasti v. CIBA Specialty Chemicals Corp.*, 492 F.3d 589, 593 (5th Cir.2007) and citing *Johnson v. Louisiana*, 351 F.3d 616, 621 (5th Cir.2003)).

For Title VII and § 1981 discrimination claims, courts "have held that adverse employment actions consist of 'ultimate employment decisions' such as hiring, firing, demoting, promoting, granting leave, and compensating." *Thompson v. City of Waco, Texas*, 764 F.3d 500, 503 (5th Cir. 2014). "[A]n employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action." *Id.*

The "'ultimate question' in a Title VII disparate treatment claim remains 'whether a defendant took the adverse employment action against a plaintiff because of her protected status'." *Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (quoting *Kanida v. Gulf Coast Med. Personnel LP,* 363 F.3d 568, 576 (5th Cir.2004)). Failure to allege facts above a "speculative level" will result in dismissal. *Id.*

Judeh failed to allege facts that would demonstrate that he suffered an adverse employment action, that any action by T-Mobile was because of any protected status, and that Judeh was treated differently from a similarly situated employee.

8

A. **Judeh Failed to State a Claim for Discrimination Based Upon a Failure to Promote**

As discussed above, any claims Judeh may have concerning being passed over for promotion are not properly before the Court. Should this Court rule otherwise, Judeh nonetheless failed to state a claim for relief under either Title VII or Section 1981.

First, Judeh alleged that T-Mobile did ultimately promote him to the position he sought of Retail Associate Manager,[39] which alone shows that Judeh's sex, race, and national origin did not play any role in T-Mobile's decisions. Second, Judeh did not allege that the delay in his being promoted was because of his sex, race or national origin, and Judeh did not allege any facts that would suggest the same. Lastly, Judeh did not allege that any similarly situated white employees or female employees were promoted to the position of Retail Associate Manager ahead of him.

Even if Judeh's failure to promote claim is properly before the Court, Judeh failed to allege facts that would support a claim of discrimination based upon his race or national origin. T-Mobile prays that this Court dismisses any claims Judeh may have based upon his not being promoted.

B. **The NGS PIP That Judeh Received Is Not an Adverse Employment Action**

Judeh alleged that T-Mobile issued an NGS PIP against him, alleged that he did not agree with it, and alleged that T-Mobile treated him unequally.[40] T-Mobile assumes that part of Judeh's complaint of unequal treatment concerns the issuance of the NGS PIP. Any such claim is not actionable under either Title VII or Section 1981.

First, Judeh did not assert that T-Mobile issued the NGS PIP because of Judeh's sex, race or national origin. Second, Judeh did not allege that a similarly situated white employee or female employee did not receive an NGS PIP but should have.

---

[39] R. Doc. 8, ¶27.
[40] R. Doc. 8, ¶¶29-30.

9

Lastly, as a matter of law, a performance improvement plan, like the NGS PIP, is not an adverse employment action. Only "ultimate employment decisions" that affect an employee's "job duties, compensation, or benefits" qualify as adverse employment actions. *Thompson v. City of Waco, Texas*, 764 F.3d 500, 503 (5th Cir. 2014). "An employer's decision to place an employee on a performance improvement plan is not an adverse employment action." *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 824 (5th Cir. 2019). This Court likewise held that "a negative employment evaluation, alone or even accompanied by an employee's placement on a performance improvement plan, does not rise to the level of an ultimate employment decision." *Turner v. Novartis Pharms.*, No. CIV.A. 10-0175, 2011 WL 901022, at *5 (E.D. La. Mar. 11, 2011). In support of its holding, this Court in *Turner* further stated:

> For example, in *Cannon v. St. Paul Fire and Marine Ins. Co.*, 2005 WL 1107372 (N.D.Tex. May 6, 2005) (Godbey, J.), the court considered whether an employee placed on a performance improvement plan was subjected to an adverse employment decision. In *Cannon,* the plaintiff's employer placed him on a forty-five-day improvement plan. However, he failed to meet the performance goals under the plan and was ultimately terminated for this failure. *Id* . at * 1. The court found that the plaintiff could not succeed on his discrimination claim with respect to the placement on the performance plan because "being required to successfully complete such a plan is not an adverse employment action as a matter of law." *Id.* at * 3. The court reasoned that under Fifth Circuit precedent, adverse employment actions do not include "every decision made by employers that arguably might have some tangential effect upon those ultimate decisions." *Id.* quoting *Dollis v. Rubin,* 77 F.3d 777, 781–82 (5th Cir.1995). Thus, the court found that "an employer who is unsatisfied with an employee's work does not make an ultimate employment decision when placing the employee in a remedial program."*Cannon,* 2005 WL 1107372 at * 3. (*See also Williams v. North Texas Tollway Authority,* 2010 WL 2403740 (N.D.Tex. April 27, 2010)(Ramirez, J.)

*Turner*, 2011 WL at *5.

That rule has likewise been advanced by the Western District and Middle District of Louisiana in two recent cases. *See Lain v. Entergy Louisiana, LLC*, No. 3:19-CV-01301, 2021 WL 2954403, at *4 (W.D. La. July 14, 2021), *aff'd sub nom. Lain v. Entergy Louisiana*, L.L.C., No. 21-30497, 2022 WL 1056090 (5th Cir. Apr. 8, 2022)(citing *Welsh, supra*) ("negative

10

performance evaluations and PIPs do not rise to the level of adverse employment actions."); *See also Brown v. Praxair, Inc.*, 2019 WL 3307836, *3, 2019 U.S. Dist. LEXIS 122839, *5-6 (M.D. La. July 23, 2019) (holding that plaintiff failed to prove he suffered an adverse employment action because "[b]eing offered a PIP does not qualify as an adverse employment action, as it is not an ultimate employment decision").

Judeh did not allege that his pay or benefits were reduced as a result of the NGS PIP. Accordingly, under the foregoing jurisprudence from this Court and the Fifth Circuit, as a matter of law the NGS PIP did not constitute an adverse employment action under either Title VII or Section 1981.

### C. The Incidents of Harassment That Judeh Alleged Fail to State a Claim for Hostile Work Environment or for Constructive Discharge

Judeh asserted that "as a result of Plaintiff's unequal treatment," he submitted his two-week notice and resigned his employment from T-Mobile.[41] Judeh failed to state a claim for relief under either Title VII or Section 1981 for constructive discharge, as the incidents of harassment fail to even support a hostile work environment claim.

"A constructive discharge occurs when the employer makes working conditions so intolerable [and] so difficult or unpleasant that a reasonable person in the plaintiff's shoes would have felt compelled to resign." *Edwards v. Smitty's Supply, Inc.*, No. CV 15-3223, 2016 WL 3667361, at *7 (E.D. La. July 11, 2016) (internal citations omitted). Courts consider a variety of factors, including the following, in assessing whether a plaintiff has pleaded a viable constructive discharge claim, courts consider a variety of factors, including the following:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisory (6) badgering, harassment, or humiliation by the employer

---

[41] R. Doc. 8, ¶¶30, 34.

11

calculated to encourage the employee's resignation; or (7) offers of early retirement that would make the employee worse off whether the offer was accepted or not.

*Brown v. Kinney Shoe Corp.,* 237 F.3d 556, 566 (5th Cir. 2001); *Edwards*, 2016 WL at p. 7.

The only factor that would remotely be applicable in this case would whether Judeh sufficiently alleged that he was harassed by the employer in a manner calculated to encourage his resignation. However, "to be actionable," the employee "must demonstrate a 'greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment claim.'" *Woods v. Delta Beverage Grp., Inc.*, 274 F.3d 295, 301 (5th Cir. 2001) (quoting *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir.1998)).

"To establish a hostile work environment claim, plaintiff must demonstrate that: (1) he is member of a protected group; (2) he was the victim of uninvited racial harassment; (3) the harassment was based on race; (4) the harassment affected a "term, condition, or privilege" of plaintiff's employment; and (5) his employer knew or should have known of the harassment and failed to take prompt remedial action." *Rios v. Westport Linen Servs., LLC*, No. CV 19-7992, 2019 WL 6615467, at *4 (E.D. La. Dec. 5, 2019) (quoting *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005)). Additionally, "workplace conduct is not measured in isolation," and courts "look to: (1) the frequency of the discriminatory conduct; (2) the severity; (3) whether it is physically threatening or humiliating as opposed to mere offensive utterance; (4) whether it unreasonably interferes with an employee's work performance; and (5) whether the workplace undermines the plaintiff's workplace competence." *Id.*

Judeh advanced the naked assertion that he was the "victim of continuous harassment and discrimination,"[42] but he only identified three incidents that would even relate to Title VII's

---

[42] R. Doc. 8, ¶12.

12

prohibition of harassment based upon sex and race.  Two incidents were innocuous comments by female co-workers in 2016 about Judeh buying coffee for his "girlfriend" or being "hired for his sex appeal."[43]  The next incident Judeh alleged occurred four years later, in July of 2020, when a co-worker supposedly compared Judeh to a slave master and sent a text message with a link to a document that Arabs enslaved Africans before Europeans did.[44]

T-Mobile re-urges its position that Judeh's claims of sex harassment are not properly before the Court.  Additionally, Judeh's claims of sex harassment cannot be used to state a claim for race based harassment because he did not state a claim for sex harassment – i.e. Judeh's claims for sex harassment are neither severe nor pervasive, and he did not report the alleged incidents of sex harassment to T-Mobile.  *Thomas v. Cook Children's Health Care Sys.*, No. 4:20-CV-01272-O, 2021 WL 4796679, at *7 (N.D. Tex. July 28, 2021)("Claims of intersectional discrimination are like those based on race but with the added component of sex… To state a claim for intersectional discrimination, a plaintiff must state a claim for both race and sex discrimination.").

Such leaves Judeh's allegation of being compared to a "slave master" by a co-worker as the sole basis for a claim of harassment based on his race.  Under established jurisprudence, a single instance of a racial epithet does not, in itself, support a claim of hostile work environment. *Weller v. Citation Oil & Gas*, 84. F.3d 191, 194 (5th Cir. 1996); s*ee also Howard v. United Parcel Serv., In,* 447 F. App'x 626, 632 (5th Cir. 2011) (rejecting claim grounded in one "racially inappropriate" term directed toward plaintiff and allegations that other employees overheard racial slurs).  More than a few isolated incidents must be evidenced for harassment.  *Martin v. Winn-Dixie Louisiana, Inc.*, 132 F. Supp. 3d 794, 812 (M.D. La. 2015) (citing *Potter v. Davis*, 03-1796,

---

[43] R. Doc. 8, ¶¶18, 19.
[44] R. Doc. 8, ¶28.

2005 U.S. Dist. LEXIS 33794, at *18, 2005 WL 3359180, at *6 (W.D. La. Dec. 9, 2005)). *See also Mosley v. Marion Cnty.*, 111 F. App'x 726, 728 (5th Cir. 2004) (finding no hostile work environment despite three incidents involving a racial slur). Judeh's allegation of one possible incident occurring over his four years of employment with T-Mobile failed to demonstrate a work environment where pervasive race-based harassment existed.

Furthermore, Judeh's allegation of being compared to a slave master does not rise to the level of severity needed to state a hostile work environment claim. First, the comment was made by one of Judeh's co-workers, rather than a supervisor. Additionally, being called a slave master in this case did not constitute a racial epithet. Judeh elaborated on the "slave master" comment in his EEOC charge, wherein Judeh stated: "Francis Kattelago…stated to me, you are never satisfied you are like a slave master."[45] Clearly, Mr. Kattelago's comparison of Judeh to a slave master

---

[45] R. Doc. 1-1. T-Mobile submits that Judeh's EEOC complaint can be properly considered on T-Mobile's Rule 12(b) Motion to Dismiss. As for what documents this Court can review in considering a Rule 12(b)(6) motion to dismiss, the Fifth Circuit recently gave the following guidance:

> In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. *See Norris v. Hearst Trust*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007); *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 640 n. 2 (5th Cir. 2005). When a defendant attaches documents to its motion that are referenced in the complaint and are central to the plaintiff's claims, however, the court can also properly consider those documents. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000).

*Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899–900 (5th Cir. 2019), cert. denied, 140 S. Ct. 2506, 206 L. Ed. 2d 462 (2020)

had nothing to do with Judeh's race. Such conclusion is further demonstrated by Judeh's additional allegations that Mr. Kattelago texted a link to a documentary in an apparent surprise that Arabs had enslaved Africans before the Europeans did. Undersigned counsel conducted an extensive nationwide legal research and did not find a single case where an Arabic employee stated a hostile work environment claim when being called a slave master by a black co-worker. T-Mobile submits that the lack of pervasiveness and severity in this case disqualifies it from being the first such case. At best, Mr. Kattelago's slave-master comment constitutes a stray remark, and stray remarks are likewise an insufficient basis to support a harassment claim. *Martin*, 132 F. Supp. 3d at 812.

Judeh's complaint fails to demonstrate an intolerable workplace that compelled his resignation. Judeh failed to state a claim for hostile work environment, and that failure likewise causes Judeh to fail to state a claim for constructive discharge.

T-Mobile prays that this Court dismisses with prejudice Judeh's claims of discrimination under both Title VII and Section 1981 and his constructive discharge claim.

## V. Judeh Failed To State A Claim For Retaliation

Though not listed as a separate count in his Amended Complaint, Judeh asserted that T-Mobile retaliated against him. Judeh's Amended Complaint demonstrates that he failed to state a claim for retaliation under either Title VII and 42. U.S.C. §1981.

Claims under Title VII and 42 U.S.C. §1981 are analyzed the same. *See Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014)) ("The legal framework governing claims under both statutes is the same as for claims brought under Title VII"). To state a *prima facie* case of retaliation under either Title VII or § 1981, a plaintiff must show that: (1) he engaged in an activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3) a causal link

15

exists between the protected activity and the adverse employment action. *Id.* Of the foregoing elements, Judeh failed to alleged that he experienced an adverse employment action.[46]

To rise to the level of an adverse employment action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 F. App'x 437, 441 (5th Cir. 2007)(citing *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 2414, 165 L.Ed.2d 345 (2006)). "Whether or not a particular disciplinary action would dissuade a reasonable worker in a particular job from making a charge of discrimination requires careful consideration of the totality of the circumstances." *Montgomery v. Sears Roebuck & Co.*, No. CIV.A. 09-0584, 2010 WL 4781438, at *6 (W.D. La. Oct. 14, 2010) (citing *Burlington Northern*, 548 U.S. at 68). "In viewing the totality of the circumstances, the relevant questions are whether the alleged adverse action affected the employee's job title, grade, duties, hours, salary, or benefits, or caused a diminution in prestige or standing among her co-workers. *Id.* (citing *Stewart v. Mississippi Transp. Com'n*, 586 F.3d 321, 332).

### A.   T-Mobile's Issuance of NGS PIP Does Not Constitute an Adverse Employment Action

In this case, Judeh alleged that T-Mobile presented him with the NGS PIP after Judeh made a complaint to Jon Frier, President of Retail Operations, which was apparently after Mr. Kattelago made his slave master comment and sent the text message to Judeh.[47] While Judeh did not

---

[46] T-Mobile does not concede nor does it admit that Judeh engaged in protected activity. Should the matter proceed, T-Mobile reserves and maintains the right to challenge whether Judeh engaged in protected activity, and T-Mobile submits that Judeh stills bears his burden to prove that he engaged in protected activity.
[47] R. Doc. 8, ¶¶28-29.

explicitly allege that the NGS PIP constituted retaliation for his complaint, T-Mobile analyzes a retaliation claim based upon the same.

T-Mobile notes that Judeh did not allege that he was suspended or that his pay was reduced as a result of the NGS. Essentially, the NGS amounts to nothing more than a write-up or written warning. In the case of written warnings, the Fifth Circuit has repeatedly held that "a written reprimand, without evidence of consequences, does not constitute an adverse employment action." *Thibodeaux-Woody v. Houston Cmty. Coll.*, 593 F. App'x 280, 286 (5th Cir. 2014) (citing *Hernandez v. Johnson*, 514 Fed.Appx. 492, 499 (5th Cir.2013)); *DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 F. App'x 437, 442 (5th Cir. 2007) (finding a single written warning not to be materially adverse); *Perez v. Brennan*, 766 F. App'x 61, 64 (5th Cir. 2019)("The [district] court held that a reasonable employee would not have found the warning letter to be materially adverse, and so it was not an adverse employment action. This ruling is consistent with prior holdings of this court."). This Court has also ruled on the issue and held that "a single letter of reprimand would not dissuade a reasonable employee from making or supporting a charge of discrimination" *Butler v. Shinseki*, No. CIV.A. 10-0857, 2011 WL 3419619, at *7 (E.D. La. Aug. 4, 2011)(relying on *DeHart, supra*)

Because Judeh has not alleged that he experienced any consequences as the result of T-Mobile's issuance of the NGS PIP, Judeh's complaints about the NGS PIP are not actionable, and Judeh failed to state a claim for relief for retaliation under Title VII and Section 1981.

### B. T-Mobile's Planned Investigation Concerning Judeh Passing Out His Real Estate Business Card Is Not An Adverse Employment Action

Judeh alleged that, after he submitted his two-week notice of resignation to T-Mobile, he informed the company that he was being discriminated against and would be filing a formal

complaint.[48]  Judeh further alleged that he did not work out his two week notice after being informed that T-Mobile would be opening an investigation in relation to Judeh passing out of his real estate business card.[49]  Judeh asserted that such opening of an investigation constitutes retaliation.[50]  He is wrong.

This Court has held that: "Workplace criticism and job scrutiny from supervisors do not constitute adverse employment actions, but termination of employment does. *Ortego v. Dep't of Transportation*, No. CV 13-836, 2014 WL 12521695, at *6 (E.D. La. Feb. 18, 2014)(citing *Butler v. Exxon Mobil Corp.*, 838 F. Supp. 2d 473, 496 (M.D. La. 2012)).  This Court further stated that: "***Internal investigations do not constitute adverse employment actions***."  *Id.* (relying on *Breaux v. City of Garland*, 205 F.3d 150, 158-61 (5th Cir. 2000), cert. denied, 531 U.S. 816 (2000)) (emphasis added);  *See also Davis v. RealPage, Inc.*, No. 3:18-CV-0986-D, 2020 WL 1325201, at *20 (N.D. Tex. Mar. 20, 2020).  Under *Ortego*, T-Mobile's alleged planned investigation does not constitute an adverse employment action and is not actionable.

Because Judeh has not alleged that he suffered from an adverse employment action, Judeh has failed to state a claim for relief for retaliation.  T-Mobile prays that Judeh's Title VII and 1981 retaliation claims be dismissed with prejudice.

## VI.  Conclusion

For the foregoing reasons, Judeh failed to state a claim for relief under Title VII or 42 U.S.C. §1981.  Judeh's Title VII sex discrimination claim and failure to promote claim are not properly before this Court for failure to exhaust his administrative remedies.  Plus, Judeh failed to allege that she was subjected to an adverse employment action that would support either a

---

[48] R. Doc. 8, ₱30.
[49] R. Doc. 8, ₱₱31-32.
[50] R. Doc. 8, ₱31.

discrimination or retaliation claim, so that Judeh has failed to allege a claim for relief under either Title VII or 42 U.S.C. §1981. T-Mobile prays that its motion to dismiss is granted and that Judeh's Amended Complaint is dismissed with prejudice.

Respectfully submitted,

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

*/s/ Andrew J. Halverson*
ANDREW J. HALVERSON (La. Bar. No. 31184)
325 Settlers Trace Blvd, Suite 201
Lafayette LA 70508
Telephone: 337-769-6582
Facsimile:  337-989-0441
Email: andrew.halverson@ogletree.com
and
Sara Grace Sirera, La. Bar No. 38405
Hancock Whitney Center
701 Poydras Street; Suite 3500
New Orleans, LA 70139
Telephone: (504) 648-2617
Email: sara.sirera@ogletree.com
Attorneys for **T-Mobile USA, Inc.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing document has this date been served to all known counsel of record in this proceeding by:

|  |  |  |  |
|---|---|---|---|
| ( ) Hand Delivery | | ( ) | Prepaid U.S. Mail |
| ( ) Facsimile | | ( ) | Federal Express |
| ( ) E-Mail | | ( X ) | CM/ECF System |

Lafayette, Louisiana, this 20th day of September, 2022.

  */s/ Andrew J. Halverson*  
Andrew J. Halverson
