UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

HILMI JUDEH                                                    CIVIL ACTION

VERSUS                                                         NO. 22-1130

T-MOBILE CENTRAL LLC ET AL.                        SECTION "R" (5)


## ORDER AND REASONS

Before the Court is defendant T-Mobile USA, Inc.'s ("T-Mobile") motion to dismiss plaintiff Hilmi Judeh's second amended complaint.[1] Plaintiff opposes the motion.[2]  For the following reasons, the Court grants defendant's motion.


## I.      BACKGROUND

This case arises from discrimination and harassment plaintiff allegedly experienced while he was employed by T-Mobile from 2016 until 2020. Plaintiff, a man of Middle Eastern descent, was first hired by T-Mobile as a retail sales consultant in 2016.[3]  In the years that followed, plaintiff applied

---

[1]      R. Doc. 21.

[2]      R. Doc. 24.

[3]      R. Doc. 20 ¶ 10.  Plaintiff does not identify his race in his complaint, but in his EEOC charge, he describes his race as white and his national origin as Arab.  R. Doc. 1-1 at 2.  On a motion to dismiss, the Court may

several times for a promotion to the position of retail associate manager, and in 2019, he received the promotion.[4]  Plaintiff alleges that, even though he was promoted, won multiple awards, and exceeded sales goals during his time at T-Mobile, he was the victim of "continuous" harassment, retaliation, and discrimination on the basis of his race, sex, and national origin, which ultimately led him to resign.[5]

Plaintiff contends he experienced various instances of harassment on the basis of his sex.  For example, plaintiff alleges that on one occasion, he brought coffee to work for one of his female coworkers, which prompted another coworker to say, "aww you brought your girlfriend coffee."[6]  He also alleges that a coworker told a customer that T-Mobile had hired plaintiff "for his sex appeal."[7]  Another coworker allegedly accused plaintiff of being bad at talking to women.[8]  Plaintiff also alleges that, on one occasion, his

---

consider documents attached to or incorporated in the complaint and matters of which judicial notice may be taken.  *See United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 379 (5th Cir. 2003).  Plaintiff refers to his EEOC charge as "Exhibit A" in his second amended complaint, but did not actually attach the document along with his filing.  He did, however, attach it to an earlier iteration of his complaint.  *See* R. Doc. 1-1.

[4]    *Id.* ¶ 26.

[5]    *Id.* ¶ 12.

[6]    *Id.* ¶ 18.

[7]    *Id.* ¶ 19.

[8]    *Id.* ¶ 32.

supervisor falsely accused him of making inappropriate comments to his female coworkers.[9]   Following this incident, plaintiff allegedly ceased communicating with all female coworkers altogether, which drew further criticism.[10]  Finally, plaintiff contends that he was discriminated against on the basis of his sex because some of his female coworkers were paid more and promoted faster than he was.[11]

In support of his claims of harassment on the basis of his race and/or national origin, plaintiff alleges that his coworkers mocked the way Arab people sing,[12] pronounced the word Arab incorrectly,[13] and made generalizations about Arab men being violent and controlling toward women.[14]  One coworker in particular allegedly compared plaintiff to a "slave master" and shared a link to a documentary about the history of Arabs enslaving Africans with the rest of the store staff.[15]

Plaintiff also makes a number of other miscellaneous complaints regarding the way he was treated during his time at T-Mobile that are unrelated to his sex, race, or national origin.  For example, plaintiff contends

---

[9]     *Id.* ¶ 15.
[10]    *Id.* ¶ 16.
[11]    *Id.* ¶ 73.
[12]    *Id.* ¶ 31.
[13]    *Id.* ¶ 32.
[14]    *Id.* ¶ 33.
[15]    *Id.*  ¶¶ 35-36.

that he witnessed other employees make inappropriate sexual comments,[16] and that one of his coworkers told him that a woman they worked with was featured in a sex tape.[17]  Plaintiff alleges that he was called a "bitch" by one coworker,[18] and that a supervisor once told him to "get the [expletive] out of my district."[19]  He contends that on another occasion, a coworker "snatched" paperwork from his hands,[20] and that he was once asked to work at a different T-Mobile location from his usual store against his preferences.[21]  He also alleges that a store manager attempted to provoke physical confrontations with plaintiff,[22] refused to pass revenue opportunities to plaintiff,[23] and interjected himself into plaintiff's conversations with customers.[24]

Finally, plaintiff alleges that he was retaliated against in two instances. First, he contends that he indicated to a supervisor that he wanted to apply for managerial jobs outside of his market.[25]  Plaintiff contends that his

---

[16]    *Id.* ¶¶ 13, 34, 38.
[17]    *Id.* ¶ 34.
[18]    *Id.* ¶ 33.
[19]    *Id.* ¶ 24.
[20]    *Id.* ¶ 39.
[21]    *Id.* ¶ 22.
[22]    *Id.* ¶ 20.
[23]    *Id.* ¶ 24.
[24]    *Id.* ¶ 20.
[25]    *Id.* ¶ 42.

supervisor retaliated against him by issuing a "Not in Good Standing Performance Improvement Plan" ("PIP").[26]

Second, plaintiff alleges that when he put in his two-week notice, he informed the company that he was resigning because he had been discriminated against, and that he intended to file a formal complaint.[27] Plaintiff asserts that after he gave notice, T-Mobile retaliated against him by opening an investigation into his practice of passing out his real estate business cards to customers.[28]   He contends that other employees had second jobs they performed while on the clock for T-Mobile but were not reprimanded or investigated for it.[29]

Plaintiff filed a complaint in this Court on April 25, 2022,[30] and he filed an amended complaint three months later.[31]   Both of these complaints brought one claim for race and sex discrimination in violation of Title VII of the Civil Rights Act of 1964.[32]   T-Mobile moved to dismiss plaintiff's amended complaint,[33] in response to which plaintiff filed this second

---

[26]     *Id.* ¶ 43.
[27]     *Id.* ¶ 46.
[28]     *Id.* ¶ 47.
[29]     *Id.* ¶¶ 48-50.
[30]     R. Doc. 1.
[31]     R. Doc. 8.
[32]     R. Doc. 1 at 6; R. Doc. 8 at 6.
[33]     R. Doc. 9.

amended complaint.  In his second amended complaint, plaintiff brings eight claims.  He brings five claims under Title VII of the Civil Rights Act of 1964: discrimination on the basis of race and national origin,[34] discrimination in pay, disparate treatment based on sex, hostile work environment, and retaliation.  Plaintiff also brings claims under the Equal Pay Act and the Emergency Paid Sick Leave Act.

T-Mobile moved to dismiss plaintiff's second amended complaint for failure to state a claim.  As a threshold matter, T-Mobile asserts that plaintiff's EEOC charge pertained only to plaintiff's claims of harassment on the basis of national origin, so plaintiff has not exhausted his administrative remedies as to his claims to sex discrimination, harassment on the basis of sex, failure to promote, pay discrimination, and retaliation.  T-Mobile also contends that plaintiff has failed to plausibly allege that he was discriminated against, harassed, or retaliated against on the basis of his race, sex, or national origin.

Plaintiff opposes defendant's motion.  The Court considers the parties' arguments below.

---

[34]  Plaintiff also cites to 42 U.S.C. § 1981 in support of this claim.  R. Doc. 20 ¶¶ 56-57.

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  The Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.  *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244 (5th Cir. 2009).  But the Court is not bound to accept as true legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S. at 678.

On a Rule 12(b)(6) motion, the Court must limit its review to the contents of the pleadings, including attachments.  *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).  The Court may also consider documents attached to a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims.  *Id.*  "In addition to facts alleged in the pleadings, however, the district court 'may also consider matters of which [it] may take judicial notice.'"  *Hall v. Hodgkins*, 305 F.

App'x 224, 227 (5th Cir. 2008) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996)).

## III.   DISCUSSION

### A.    Title VII of the Civil Rights Act of 1964

#### 1.    Exhaustion of Administrative Remedies

Before filing a civil action under Title VII, a plaintiff must file a timely administrative charge with the EEOC. *See Price v. Choctaw Glove & Safety Co.*, 459 F.3d 595, 598 (5th Cir. 2006). A Title VII suit may "extend as far as, but no further than, the scope of the EEOC investigation which could reasonably grow out of the administrative charge." *Vicknar v. Louisiana Dep't of Public Safety and Corrections*, 555 F. App'x 325, 332 (5th Cir. 2014). Accordingly, a Title VII lawsuit may include allegations like or related to allegations contained in the EEOC charge and growing out of such allegations during the pendency of the case before the EEOC. *Stingley v. Watson Quality Ford, Jackson, MS*, 836 F. App'x 286, 291 (5th Cir. 2020) (courts must assess the scope of a Title VII lawsuit "somewhat broadly, not solely by the scope of the administrative charge itself"). As a general matter, a charge of employment discrimination "must be construed with the 'utmost liberality,'" in part because "such charges are generally prepared by laymen

untutored in the rules of pleading." *Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 78 (5th Cir. 1982).  A Title VII plaintiff's failure to exhaust his administrative remedies "is not a jurisdictional bar but rather a prudential prerequisite to suit." *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 305 (5th Cir. 2018).

Plaintiff's EEOC charge alleges retaliation and discrimination on the basis of race and national origin.[35]  Plaintiff cites the following facts in support of his EEOC charge: (1) that one of his coworkers compared him to a slave master, contended that Arabs enslaved Africans before Europeans did, and sent around a link to a documentary about the same; (2) that when plaintiff reported that incident, nothing was done about it; (3) that plaintiff was issued a PIP for "talking inappropriate"; and (4) that after plaintiff submitted his two-week notice, T-Mobile opened an investigation against plaintiff for plaintiff's practice of giving his real estate business cards to T-Mobile customers.[36]

Plaintiff's EEOC charge does not expressly reference any incidents of sex discrimination or harassment, nor does it mention the failure to promote or the pay discrimination issues that plaintiff raises in his complaint. Plaintiff contends that it is nevertheless possible that these issues could have

---

[35]   R. Doc. 1-1.
[36]   *Id.* at 1.

"grown out of" the EEOC's investigation of plaintiff's charge.  The Court need not decide whether these claims "grow out of" the investigation because even if all of plaintiff's claims were within the scope of his EEOC charge, plaintiff fails to state a claim.

### 2.    *Merits of Plaintiff's Title VII Claims*

Plaintiff brings five claims under Title VII: discrimination on the basis of race and national origin, discrimination in pay, disparate treatment based on sex, hostile work environment, and retaliation.  The Court will address each claim in turn.

#### i.  Discrimination on the basis of race and national origin

Plaintiff contends that he was unlawfully discriminated against on the basis of his race and national origin.  Although plaintiff characterizes this as a Title VII claim, he also cites to 42 U.S.C. § 1981 in support of his claim.  The Court will construe this claim as one for discrimination under both statutes. Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of

such individual's race, color, religion, sex, or national origin."  42 U.S.C. §

2000e-2.  Similarly, section 1981 provides:

> All persons within the jurisdiction of the United States shall have
> the same right in every State and Territory to make and enforce
> contracts, to sue, be parties, give evidence, and to the full and
> equal benefit of all laws and proceedings for the security of
> persons and property as it is enjoyed by white citizens, and shall
> be subject to like punishment, pains, penalties, taxes, licenses,
> and exactions of every kind, and to no other.

42 U.S.C. § 1981.  "Although § 1981 does not itself use the word 'race,' the

[Supreme] Court has construed the section to forbid all 'racial'

discrimination in the making of private as well as public contracts."  *Saint*

*Francis College v. Al-Khazraji*, 481 U.S. 604, 609 (1987).  Section 1981 has

also been construed to prohibit discrimination on the basis of national origin.

*Id.* at 615 ("If respondent on remand can prove that he was subjected to

intentional discrimination based on the fact that he was born an Arab . . . he

will have made out a case under § 1981.").  "The legal framework governing"

Title VII claims and section 1981 claims "is coextensive."  *Willis v. Cleco*

*Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).

In order to state a claim for race discrimination under Title VII, a

plaintiff must allege "(1) that he is a member of a protected class, (2) that he

was qualified for the position, (3) that he suffered an adverse employment

action, and (4) that others similarly situated were more favorably treated."

11

*Durkin v. U.S. Postal Serv.*, 54 F. App'x. 794, 2002 WL 31845206, at *1 (5th Cir. 2002) (citing *LaPierre v. Benson Nissan*, 86 F.3d 444, 448 (5th Cir. 1996)).

The only potential "adverse employment action" plaintiff links to his race or national origin in his complaint was his resignation, which he contends amounts to constructive discharge. "In determining whether an employer's actions constitute a constructive discharge," courts consider "whether 'working conditions became so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 480 (5th Cir. 2008) (alterations omitted) (quoting *Penn. State Police v. Suders*, 542 U.S. 129, 141 (2004)). An employee may be constructively discharged in several ways, including by:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not.

*Aryain*, 534 F.3d at 481.

The only method of constructive discharge plaintiff arguably invokes in his complaint is "badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation." *Id.* Although plaintiff does not allege that he experienced any "badgering, harassment, or

humiliation" on the basis of his race, he does contend that he was harassed on the basis of his national origin: He alleges that one of his coworkers compared him to a slave master and texted a link to a documentary regarding the history of Arabs enslaving Africans to all of the store staff members,[37] and that another coworker openly criticized Arab men's treatment of women.[38]  He also alleges that one of his coworkers mocked the way Arabs sing, and that another intentionally mispronounced the word "Arab."[39]

These few, isolated instances of harassment, taken as true, are not "so intolerable that a reasonable person in [plaintiff's] position would have felt compelled to resign." *Martin v. American Midstream Partners, LP*, 386 F. Supp. 3d 733, 740 (E.D. La. May 15, 2019) (dismissing constructive discharge claim when African American plaintiff alleged that a noose was left in his workspace).  "Mere harassment," absent "aggravating factors to justify departure," does not constitute constructive discharge.  *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 331 (5th Cir. 2004).  The several instances of harassment that plaintiff allegedly endured, while unprofessional and culturally insensitive, are not sufficiently "sever[e] or pervasive[e]" to state a claim for constructive discharge.  *Harvill v.*

---

[37]    R. Doc. 20 ¶¶ 36-37.

[38]    *Id.* ¶ 33.

[39]    *Id.* ¶¶ 31-32.

13

*Westward Commc'ns, LLC*, 433 F.3d 428, 440 (5th Cir. 2005).  Plaintiff also fails to allege that the harassment he experienced was "calculated to encourage his resignation." *Aryain*, 534 F.3d at 481.  Accordingly, plaintiff's claims for discrimination on the basis of race under Title VII and section 1981 are dismissed.

ii.  Discrimination in pay

Title VII prohibits discrimination in compensation based on an individual's sex, race, or national origin.   To establish a claim of discriminatory compensation under Title VII, a plaintiff must show that he (1) is a member of a protected class and (2) was paid less than a nonmember for work requiring substantially the same responsibility. *Sanders v. W. Water Features, Inc.*, 248 F. App'x 576, 577 (5th Cir. 2007).

Plaintiff asserts that he was subjected to "discriminatory compensation," but the only factual allegation he cites in support of this claim is that female employees "received a higher rate of pay."[40]   This conclusory allegation is insufficient to plausibly allege pay discrimination. Plaintiff alleges no facts indicating that his female coworkers were paid more "for work requiring the same responsibility" as his work. *Id.*; *see also Gentry*

---

[40]     R. Doc. 20 ¶ 26.

*v. Jackson State University*, 161 F. Supp. 3d 418, 422 (S.D. Miss. 2015) (dismissing Title VII discriminatory compensation claim when plaintiff "alleged nothing more than that she 'has not been compensated for coordinating programs, unlike her male coworkers have'").[41]   Plaintiff has thus failed to state a claim for pay discrimination under Title VII.

### iii.   Disparate treatment based on sex

Plaintiff also brings a claim under Title VII for disparate treatment on the basis of sex.   "Disparate-treatment discrimination addresses employment actions that treat an employee worse than others based on the employee's race, color, religion, sex, or national origin."   *Cicalese v. University of Texas Medical Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (quoting *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006)).   There are "two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an adverse employment action, (2) taken against a plaintiff *because of* [his] protected status."   *Id.* (internal quotation

---

[41]   Plaintiff does allege that his female coworkers were paid more for performing the same work in support of his claim for pay discrimination under the Equal Pay Act, but as discussed in Section III.B.1, *infra*, those allegations are nothing more than a conclusory recitation of the elements of an Equal Pay Act claim, unsubstantiated by any factual allegations that would render his claim plausible.

marks omitted) (emphasis in original). Accordingly, a plaintiff must allege "facts, [either] direct or circumstantial, that would suggest [the employer's] actions were based on" the plaintiff's protected class. *Id.*

In support of this claim, plaintiff asserts that T-Mobile "created and fostered policies and a work environment" that disadvantaged plaintiff compared to similarly situated female employees. Plaintiff does not actually identify what those policies are, nor does he plausibly allege that he suffered an "adverse employment action" because of his sex. In the disparate treatment context, only "ultimate employment decisions" are actionable adverse employment actions. *Moore v. Napolitano*, No. 07-2666, 2010 WL 2671850, at *11 (E.D. La. June 29, 2010). "Ultimate employment decisions" include "hiring, granting leave, discharging, promoting, and compensating." *Id.*

Plaintiff asserts in his complaint that his female coworkers were promoted more quickly and paid at a higher rate than he was. Although these are the kinds of actions that constitute "ultimate employment decisions" for purposes of a disparate-treatment claim, plaintiff alleges no direct or circumstantial facts that, if true, would plausibly indicate that plaintiff's failure to be promoted as quickly or paid as much as his female coworkers was because of his membership in a protected class. *Cicalese*, 924 F.3d at

766.   For example, he does not explain how his work responsibilities compared to those of his female coworkers who were allegedly paid more. *Taylor v. United Parcel Service, Inc.*, 554 F.3d 510, 523 (5th Cir. 2008) ("[A]n individual plaintiff claiming disparate treatment in pay under Title VII must show that his circumstances are 'nearly identical' to those of a better-paid employee who is not a member of the protected class.").  Nor does he describe how his qualifications compared to those of the women who were allegedly promoted more quickly than he was.  In sum, plaintiff does not include any factual allegations that would permit the Court to plausibly infer that he was paid less or passed over for promotions *because* he was a man.  The Court thus dismisses plaintiff's claim for disparate treatment on the basis of sex.

### iv.  Hostile work environment

Plaintiff also contends that T-Mobile fostered a hostile work environment.  To state a claim for hostile work environment under Title VII, a plaintiff must allege that he: "(1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on [his membership in a protected class]; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the

employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).

An employee has a cause of action under Title VII "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citation omitted); *see also Mendoza v. Helicopter*, 548 F. App'x 127, 128-29 (5th Cir. 2013). This standard requires extreme conduct, and "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citation and quotation marks omitted).

In evaluating hostile work environment claims, courts consider the totality of the circumstances, including "the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." *Alaniz v. Zamora-Quezada*, 591

18

F.3d 761, 771 (5th Cir. 2009) (internal citation omitted).  A plaintiff must subjectively perceive the environment to be abusive, and the work environment must be objectively hostile or abusive.  *See Harris*, 510 U.S. at 21-22.  The "mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII."  *Id.* at 21 (internal citation and alterations omitted).

In plaintiff's complaint, he alleges that T-Mobile fostered a hostile work environment based on his sex.  In his opposition brief, plaintiff attempts to broaden the scope of this claim to include harassment on the basis of his race and national origin as well.[42]  Construing the complaint liberally, plaintiff alleges that over the course of his four-year employment, his coworkers harassed him because of his sex, race, or national origin by:

1. Comparing him to a slave master,[43]

2. Sharing information about a documentary on Arabs' history of enslaving Africans,[44]

3. Making negative generalizations about Arab men's treatment of women,[45]

4. Making fun of the way Arabs sing,[46]

---

[42]   R. Doc. 24 at 9.

[43]   R. Doc. 20 ¶ 36.

[44]   *Id.* ¶ 37.

[45]   *Id.* ¶ 33.

[46]   *Id.* ¶ 31.

5.  Mispronouncing the word "Arab,"

6.  Accusing him of not knowing how to speak to women,[47]

7.  Telling a customer that plaintiff was hired "for his sex appeal,"[48]

8.  Referring to a female coworker as his girlfriend,[49] and

9.  Falsely accusing him of making unwanted comments to female coworkers.[50]

Although plaintiff includes other allegations of mistreatment by his coworkers, these are the only instances of harassment or mistreatment with any conceivable nexus to plaintiff's membership in a protected group.

Taking all of these allegations as true, plaintiff has failed to allege "extreme conduct" that "amounts to discriminatory changes in the terms and conditions of employment." *Martin*, 386 F. Supp. 3d at 739. Rather, these instances of harassment are no more than "simple teasing, offhand comments, and isolated incidents." *Id.*; *see also Mosley v. Marion Cnty.*, 111 F. App'x 726, 728 (5th Cir. 2004) (finding no hostile work environment despite three incidents involving racial slurs); *Vallecillo v. United States Dep't of Housing & Urban Dev.*, 155 F. App'x 764, 767 (5th Cir. 2005)

---

[47]  *Id.* ¶ 32.
[48]  *Id.* ¶ 19.
[49]  *Id.* ¶ 18.
[50]  *Id.* ¶ 14.

(finding no hostile work environment when supervisors referred to Hispanic employee as "Che Guevara" and "an aggressive Hispanic," which comments "epitomize the type of utterances, epithets, and offhand comments that we have repeatedly stated were beyond Title VII's purview").

Further, plaintiff's own allegations bely any suggestion that the harassment he experienced "interfered with his work performance." *Alaniz*, 591 F.3d at 771. Plaintiff contends that during his time at T-Mobile, he exceeded his sales goals, won awards for his performance, and was ultimately promoted.[51] Plaintiff thus fails to state a claim for hostile work environment.

### v. Retaliation

Finally, plaintiff alleges that T-Mobile retaliated against him for complaining about the discrimination he experienced.[52] In order to state a retaliation claim, a plaintiff must allege "(1) that [he] engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002). An adverse employment action is "one that 'a reasonable employee would

---

[51]     *Id.* ¶ 11.
[52]     *Id.* ¶¶ 87-88.

have found . . . [to be] materially adverse, which in [the retaliation] context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Puente v. Ridge*, 324 F. App'x 423, 429 (5th Cir. 2009) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).  An employment action is not materially adverse if it amounts to only "petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington*, 548 U.S. at 68.

In plaintiff's complaint, he alleges that T-Mobile retaliated against him in two ways.  First, T-Mobile allegedly issued a PIP to retaliate against him "for his desire to transfer markets."[53]  Second, after he put in his two-week notice and informed T-Mobile that he intended to file a complaint about the discrimination he allegedly faced, T-Mobile retaliated by investigating plaintiff's practice of handing out his real estate business cards to T-Mobile customers.[54]

For a retaliation claim to be cognizable under Title VII, a plaintiff must plausibly allege that the retaliation was taken in response to his participation in a "protected activity."  "Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge,

---

[53]     R. Doc. 24 at 11; R. Doc. 20 ¶ 42.

[54]     *Id.* ¶ 47.

testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (internal quotations omitted). Indicating a desire to transfer markets is not a protected activity. Accordingly, even if T-Mobile's issuance of a PIP constituted an "adverse employment action," plaintiff's claim premised on the PIP is not cognizable.

Plaintiff arguably does allege that the investigation into his practice of passing out business cards was premised on his participation in a protected activity—he asserts that the investigation was launched after he "informed the company that he was being discriminated against and would be filing a formal complaint."[55]   Plaintiff does not expressly contend that the investigation was launched *because of* his threat, but even if he had, plaintiff's retaliation claim fails because "[i]nternal investigations do not constitute adverse employment actions." *Ortego v. Dep't of Transp.*, No. 13-836, 2014 WL 12521695, at *6 (E.D. La. Feb. 18, 2014) (collecting cases); *see also Smith v. Harvey*, 265 F. App'x 197, 201-02 (5th Cir. 2008) (investigating

---

[55]   *Id.* ¶ 46.

employee for unusually high phone bill did not constitute materially adverse employment action).

Finally, plaintiff contends that T-Mobile retaliated against him by "isolating him, constantly monitoring and criticizing his work, adding additional workload and new, draconian work conditions, and subjecting him to threatening and abusive behavior," all of which culminated in his "constructive discharge as a result of his complaints of unlawful employment practices."[56] Plaintiff alleges no facts in support of the allegations that he was isolated, that his work was monitored or criticized, that he was subjected to additional workload and new working conditions, or that he was ever threatened by his colleagues for participating in a protected activity. And as discussed in Section III.A.2.i, *supra*, plaintiff fails to plausibly allege that the mistreatment he faced at work rose to the level of constructive discharge. The Court thus dismisses plaintiff's Title VII retaliation claim.

### B.   Other Claims

Plaintiff brings three additional claims in his second amended complaint: discrimination under the Equal Pay Act, retaliation under the

---

[56]   *Id.* ¶ 88.

Equal Pay Act, and failure to pay under the Emergency Paid Sick Leave Act (the "EPSLA").  The Court will address each in turn.

    1.    *Discrimination under the Equal Pay Act*

Plaintiff contends that T-Mobile discriminated against him on the basis of his sex in violation of the Equal Pay Act.  The Equal Pay Act prohibits discrimination:

> [B]etween employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which [the employer] pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

29 U.S.C. § 206(d)(1).  In order to establish a claim under the Equal Pay Act, a plaintiff must demonstrate (1) that his employer is subject to the Act; (2) that he performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and (3) that he was paid less than members of the opposite sex.  *Jones v. Flagship Int'l*, 793 F.2d 714, 722-23 (5th Cir. 1986).

Plaintiff recites these elements in support of his claim:  He alleges that T-Mobile paid him "lower compensation than it paid to female employees for equal work, the performance of which required equal skill, effort, and

responsibility, and which were performed under similar working conditions."[57]  He goes on to assert that the differential in pay "was not due to seniority, merit, quantity or quality of production, or a factor other than sex."[58]  Rather, he contends it was due to his sex.[59]

These conclusory allegations are insufficient to state a claim.  Courts in this district have dismissed Equal Pay Act claims as impermissibly conclusory and unsupported when plaintiffs have alleged more factual detail than plaintiff does here.  For example, in *Corken v. Stranco Field Servs., LLC*, the plaintiff contended that her employer reduced her salary by $25,000 per year, while simultaneously increasing pay for male employees performing functions requiring equal skill, effort, and responsibility.  No. 18-5566, 2018 WL 4614001, at *2 (E.D. La. Sept. 29, 2018).  She also alleged that certain male colleagues received travel expense reimbursements, but she did not, despite doing the same work-related travel as her male colleagues.  *Id.*  The court dismissed the plaintiff's claim, holding that she had "fail[ed] to specify the precise job functions she performed that were equivalent to those performed by her male counterparts, and neglect[ed] to articulate how she was paid less for the same work."  *Id.*  Similarly, in

---

[57]     *Id.* ¶ 73.
[58]     *Id.* ¶ 75.
[59]     *Id.* ¶ 76.

*Boudreaux v. Stranco Field Servs., LLC*, the plaintiff identified two potential male comparators with whom she worked, but failed to allege any specific facts "about the skill, effort, or responsibility required by the performance of either's position." No. 18-5569, 2019 WL 2142045, at *7 (E.D. La. May 16, 2019). Rather, much like plaintiff in this case, she relied on the conclusory allegation that the men "performed work in a position requiring equal skill, effort and responsibility under the same working conditions." *Id.* The court dismissed her Equal Pay Act claim, noting that she could not rely on "a mere formulaic recitation of a cause of action's elements." *Id.*

Here, plaintiff provides even less factual support for his claims than the plaintiffs in *Corken* and *Boudreaux*. Plaintiff's complaint is bereft of *any* "factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007); *see also Espinoza v. San Benito Consol. Indep. Sch. Dist.*, 753 F. App'x 216, 219-20 (5th Cir. 2018) (affirming dismissal of Equal Pay Act claims when plaintiffs failed to "explain how their job duties were the same as" a female coworker's they identified as a comparator). Plaintiff's discrimination claim under the Equal Pay Act is thus dismissed.


    2.    *Retaliation under the Equal Pay Act*

Plaintiff also brings a claim for retaliation under the Equal Pay Act. The Equal Pay Act prohibits any person from:

> [D]ischarg[ing] or in any manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

29 U.S.C. § 215(a)(3).  Much like claims for retaliation under Title VII, to establish a prima facie case of retaliation under the Equal Pay Act, a plaintiff must "demonstrate that: (1) [he] engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action." *Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 469 (5th Cir. 2021) (internal quotation marks omitted).

Plaintiff alleges that he lodged complaints with T-Mobile and the EEOC regarding the discrimination he was subjected to under the Equal Pay Act.[60]  As with his Title VII retaliation claim, plaintiff contends that T-Mobile retaliated by "isolating him, constantly monitoring and criticizing his work, adding additional workload and new, draconian work conditions, and subjecting him to threatening and abusive behavior," all of which culminated

---

[60]     R. Doc. 20 ¶ 82.

in his constructive discharge.[61]   As discussed in Sections III.A.2.v and III.A.2.i, *supra*, plaintiff has alleged no facts in support of this claim, nor has he plausibly alleged that he was constructively discharged.  His Equal Pay Act retaliation claim thus fails for the same reasons as his Title VII retaliation claim.

### 3. *Failure to Pay under the EPSLA*

Finally, plaintiff claims that T-Mobile refused to pay him the full amount he is owed under the EPSLA.  Congress enacted the EPSLA under the Families First Coronavirus Response Act in response to the pandemic. *See New York v. United States Dep't of Labor*, 477 F. Supp. 3d 1, 5 (S.D.N.Y. 2020).  The EPSLA requires covered employers to provide paid sick leave to employees who: (1) are subject to federal, state, or local quarantine or isolation orders related to COVID-19; (2) have been advised by a health care provider to self-quarantine due to COVID-19; (3) are experiencing symptoms of COVID-19 and seeking a medical diagnosis; (4) are caring for an individual subject to a quarantine or isolation order by the government or a healthcare provider; (5) are caring for a child whose school or place of care is closed, or whose childcare is unavailable, because of COVID-19; or (6) are experiencing

---

[61]   *Id.* ¶ 83.

any other substantially similar condition specified by the Secretary of Health and Human Services in consultation with the Secretary of the Treasury and the Secretary of Labor. *Bruce v. Olde England's Lion & Rose Rim, LLC*, No. 20-928, 2021 WL 4953910, at *4 (W.D. Tex. Oct. 25, 2021).

Plaintiff alleges no facts supporting his claim to paid sick leave under the EPSLA. This claim is thus dismissed.

### C.    Leave to Amend

The Court should "freely give" leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2); *Leal v. McHugh*, 731 F.3d 405, 417 (5th Cir. 2013). "Among the permissible bases for denial of a motion to amend are . . . repeated failure to cure deficiencies by amendments previously allowed, . . . [and] futility of amendment." *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 391 (5th Cir. 2005). Plaintiff has already filed three versions of his complaint. The factual details and new causes of action plaintiff has added in the operative complaint do not cure the deficiencies in the earlier iterations. The Court finds that, in light of plaintiff's repeated failure to state a claim, granting plaintiff leave to amend a third time would likely be futile. The Court thus dismisses plaintiff's second amended complaint with prejudice.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion to dismiss, and dismisses plaintiff's second amended complaint WITH PREJUDICE.    The Court DISMISSES defendant's motion to dismiss plaintiff's first amended complaint[62] as MOOT.

New Orleans, Louisiana, this  18th  day of January, 2023.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[62]    R. Doc. 9.

31